NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 13 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SUSAN DORETY, individually and on behalf of the Estate of Michael Dorety, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> PRINCESS CRUISE LINES, LTD., <br><br> Defendant-Appellee. | No.   22-55378 <br><br> D.C. No. <br> 2:20-cv-03507-RGK-SK <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 15, 2023
Pasadena, California

Before:  WARDLAW, CHRISTEN, and SUNG, Circuit Judges.

Plaintiff Susan Dorety appeals the district court's dismissal of the wrongful

death action she brought against Princess Cruises, Ltd. (Princess) following her

husband Michael Dorety's exposure to COVID-19 during a Hawaiian cruise and

his resulting death.  The district court dismissed the action on preemption grounds,

concluding that the Death on the High Seas Act (DOHSA), 46 U.S.C. § 30302,

---

        *        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

preempted Plaintiff's claim.  We have jurisdiction under 28 U.S.C. 1291.

Reviewing the district court's factual findings for clear error, *see Oakland Bulk &*

*Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 613 (9th Cir. 2020),

we reverse and remand for trial.[1]

The district court erred in concluding that Princess met its burden to show

that Mr. Dorety contracted COVID-19 on the high seas.

DOHSA applies "[w]hen the death of an individual is caused by wrongful

act, neglect, or default occurring . . . beyond three miles from the shore of the

United States."  46 U.S.C. § 30302.  We have held that this text "refer[s] to the site

of an accident on the high seas, not to where death actually occurs or where the

wrongful act causing the accident may have originated."  *Bergen v. F/V St. Patrick*,

816 F.2d 1345, 1348 (9th Cir. 1987) (citing *Lacey v. L. W. Wiggins Airways, Inc.*,

95 F. Supp. 916, 918 (D. Mass. 1951)); *see also Offshore Logistics, Inc. v.*

*Tallentire*, 477 U.S. 207, 232 (1986) ("[S]tate statutes are pre-empted by DOHSA

where it applies . . . .").  The district court concluded, and Princess concedes, that

Princess bore the burden of proving the applicability of DOHSA as an affirmative

defense.  *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021)

("Preemption is an affirmative defense, so the defendant bears the burden of

---

[1] Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context for our ruling.

2

pleading and supporting its preemption argument.").

Consistent with our DOHSA precedent, the district court identified the "site of [the] accident" as the relevant location for determining whether DOHSA applies. *See Bergen*, 816 F.3d at 1348. The district court concluded, and no party contests, that the relevant "accident" was Mr. Dorety's exposure to COVID-19. Thus, resolving whether DOHSA applies turns on the site where Mr. Dorety was exposed to the disease. At the district court's evidentiary hearing on this question, Plaintiff presented evidence to suggest that Mr. Dorety contracted COVID-19 between February 26–29, 2020, while in Hawaii's territorial waters. Specifically, Plaintiff's expert testified that Mr. Dorety most likely contracted the disease while on a tender boat travelling to and from shore. Princess, on the other hand, presented expert testimony suggesting that Mr. Dorety contracted COVID-19 on March 2 or later while the Grand Princess sailed the high seas.

The district court erroneously concluded that Princess met its burden to show Mr. Dorety more likely than not contracted COVID-19 on the high seas. The district court looked to only two categories of evidence: evidence about Mr. Dorety's symptoms and the average COVID-19 incubation period, and evidence about possible sites of exposure. This analysis failed to account for symptoms

3

other than fever.[2] Ms. Dorety's testimony and that of Mr. Dorety's treating physicians showed that Mr. Dorety had symptoms of loss of appetite, fatigue, trouble breathing, and a cough—all present before the fever developed, and all known symptoms of COVID-19. On March 10, 2020, Mr. Dorety was admitted to the emergency room, but he was still able to communicate with his care providers there. One of them, Dr. Yusuke Kimura, described Mr. Dorety as "a good historian" and documented Mr. Dorety's contemporaneous recollection that he began experiencing symptoms, including loss of appetite, five days prior. Counting back 5–6 days from the onset of these earlier symptoms, reflecting the average incubation period, supports Plaintiff's contention that Mr. Dorety was exposed to COVID-19 in the territorial waters of Hawaii. That Mr. Dorety also later developed a fever does not undermine the likelihood that these earlier symptoms were also symptoms of COVID-19. And Princess's efforts to establish alternative explanations for these early symptoms cannot, ultimately, disprove that these were COVID-19 symptoms in Mr. Dorety's case. Instead, as Princess concedes, "[i]t was impossible to determine whether the nonspecific symptoms Mr. Dorety experienced were due to COVID-19 or to some other cause."

---

[2] Princess points to fever as the "only unequivocal evidence in the record regarding when Mr. Dorety first experienced specific symptoms of COVID-19." But Princess bore the burden of proving that the earlier symptoms were not symptoms of COVID; Ms. Dorety did not bear the burden of proving that they were.

Princess notes that the 5–6 day incubation period is merely a median or average incubation period, and that the testimony of its expert Dr. Jerome shows that a given individual may experience an incubation period anywhere from 2–14 days, and "[w]e simply can't know for a given individual" how long the incubation period actually was. This argument highlights the indeterminate nature of the inquiry.

The evidence regarding crowds and exposure risk is similarly inconclusive. The district court noted that Plaintiff "introduced minimal evidence that COVID-19 was more prevalent on [the tender] boat than on the Grand Princess." But this misplaces the burden of proof. And although Princess sought to undermine Plaintiff's evidence that Mr. Dorety contracted COVID-19 on the tender boat, it admits that its expert "could not definitively eliminate the possibility that Mr. Dorety contracted COVID-19 on the tender boat."

The district court also relied on Princess's evidence regarding the possibility of exposure on the high seas. Again, however, that Mr. Dorety also may have been exposed on the cruise ship while sailing the high seas does not undermine the likelihood of his exposure on the tender boat. Princess did not disprove that Mr. Dorety contracted COVID-19 on the tender boat, nor prove it more likely than not that he was not exposed to COVID-19 until the cruise reached the high seas.

On an inconclusive record, the party who carries the burden of proof

5

necessarily fails to shoulder that burden. *See Marinelarena v. Garland*, 6 F.4th 975, 978 (9th Cir. 2021) ("It is well established that the party who bears the burden of proof loses if the record is inconclusive on the crucial point." (citation omitted)). Because we have a "definite and firm conviction" that a mistake has been made, we find that this rises to the level of clear error and reverse. *See Yu v. Idaho State Univ.*, 15 F.4th 1236, 1241 (9th Cir. 2021) (citation omitted).[3]

      **REVERSED AND REMANDED.**

---

[3] Dorety also argues that a jury, not the district court, should have been tasked with determining the place of injury. Because we find that Princess failed to carry its burden under the procedure relied upon by the district court, we need not address this question.